[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated February 17, 1998, the plaintiff wife, Paula Pisano, commenced an action seeking a legal separation. The defendant, Thomas A. Pisano, appeared through counsel who later withdrew her appearance with permission of the court. On August 12, 1998, counsel for the minor child, Kim Duell, was appointed by order of the Court. The Court granted plaintiff's oral amendment on August 26, 1999, amending the complaint to seek a dissolution of the marriage on the grounds of irretrievable breakdown, custody, child support, alimony, property distribution and other relief. The plaintiff appeared with counsel and the defendant appeared pro se on July 26, 1999, and August 30, 1999, and presented oral testimony and exhibits. The Court, after hearing and reviewing the evidence, finds the following facts:
The plaintiff, whose maiden name was Paula Ciarci, married the defendant at Hartford, Connecticut on November 12, 1988. She has resided continuously in the State of Connecticut for one year next preceding the date of filing this complaint. All statutory stays have expired and this Court has jurisdiction. The parties have one minor child, born issue of the marriage, Alessandro CT Page 12782 Pisano born November 12, 1989. The Court further finds that no other minor child or children have born to the wife since the date of the marriage. The Court further finds that no state or municipal agency is contributing to the support of the parties and/or the minor child.
The wife is presently 40 years old and, in addition to receiving a high school diploma, she has attained a bachelors degree in Social Work in 1983 and a masters degree in 1992 in the concentrated area of geriatric social work from Southern Connecticut State University. The wife was employed as a geriatric social worker from 1983 through 1984 in Middletown, from 1984 through 1986 at the City of Hartford and 1986 through 1989 at Newington. The plaintiff worked on a full-time basis until the birth of her daughter in late 1989. The wife continued to work part-time in Newington from 1990 through 1994.
The wife, while working part-time as a geriatric social worker, was injured in an automobile collision in May 1994. The wife obtained worker's compensation benefits through March of 1996 when her benefits were terminated by order of the Worker's Compensation Commissioner. The plaintiff did not return to work and settled her worker's compensation claims by way of a lump sum payment with the funds remaining from said settlement reflected on her financial affidavit dated July 26, 1999. The plaintiff further applied for and received Social Security Disability Benefits effective March of 1997. She received retroactive payments from Social Security for herself and her daughter with the balance of said funds also stated on her financial affidavit. The plaintiff presently receives $213.95 a week from her personal award for social security disability benefits and an additional $113.72 per week social security disability benefits for her minor child. The pendente lite orders require the defendant to pay the sum of $125.00 a week for support of the minor child and $75.00 a week alimony. The plaintiff has total net weekly income from all sources of $527.67 inclusive of pendente lite child support and alimony.
The wife has presented uncontroverted oral testimony and documentary evidence of a myriad of physical problems. Wife presently suffers from a congenital condition known as Wagner-Stickler Syndrome, which is a deterioration of the connective tissues in the body. This disease is the cause of a severe eye condition resulting in total loss of vision in her left eye in 1988 and a detached retina in her right eye. Said CT Page 12783 condition required her to have surgical repairs to the right eye for detachment of the retina on three different occasions. In addition to her severe retina problems, she is now developing a cataract in her right eye. Her physician reports that, although her vision in her right eye is reasonably good at the present time, a cataract extraction in her remaining eye that is already fragile from her hereditary condition, is a "daunting prospect for a person only 39 years old". (See Plaintiff's Exhibit #11.) She also suffers from degenerative osteo-arthritis in her knees and hips which was exacerbated by the 1994 automobile collision. As a result of the collision in 1994, she was diagnosed with a cyst in the posterior fossa of her brain which affects her balance and dizziness. The plaintiff further testified that she also suffers from fibromyalgia and with all 18 triggers points affected. The plaintiff receives treatment for her eye condition from the Steven Retina Institute in Massachusetts in conjunction with care and treatment from a local eye doctor. The oral testimony of the plaintiff concerning her medical conditions was unrefuted and/or uncontroverted by the defendant.
The plaintiff has prescription costs totaling $600.00 per month. Her eye glasses, examinations and contact lenses cost approximately $120.00 per year, with dental expenses for cleaning and cavities approximating $130.00 per year. The medical insurance (presently available through her husband's retirement plan) pays all but 10% of her prescription costs which total approximately $100.00 per month. The parties stipulated and agreed that the COBRA expense from the date of dissolution of the marriage for insurance coverage for the wife is $44.95 per month for major medical, and $23.50 a month for dental for a total of $68.45 per month. After the COBRA coverage terminates (i.e., after 3 years from the date of judgment) Medigap C is available to the wife for the sum of $110.00 per month including coverage for out of state medical services. Medigap C does not cover prescriptions, dentists and/or optometrist expenses. The wife would therefore have to pay an additional $620.00 per month for prescriptions, glasses and dental work based upon the testimony of the plaintiff which was also not refuted and/or controverted by the defendant. The plaintiff will need insurance coverage for out-of-state doctors in that she receives care for her eye condition by Schepen's Retina Associates in Boston, Massachusetts. Any medical treatment and/or surgery on the eye would be performed out-of-state with medical insurance coverage needed by the wife to cover any future medical and surgical treatments to her right eye. CT Page 12784
The husband is 50 years old and, in addition to completing his high school education, he has received a Bachelors and Masters Degree in Philosophy. He worked full time for 20 years as an employee of the City of Hartford prior to his retirement on July 30, 1993. He performed various duties while employed by the City of Hartford as a Senior Administrative Analyst and retired as a Principal Administrative Analyst for the Finance Department Office of Management and Budget for the City of Hartford. (See Defendant's Exhibit E.) Prior to his employment with the City of Hartford, he taught courses as an adjunct professor at the University of Hartford. He also tutored both in Philosophy and German while employed by the University of Hartford as reflected in his resume.
The defendant retired from his position with the City after he was offered an attractive severance package, including salary continuation and medical insurance benefits. His retirement was a joint decision of the plaintiff and defendant. He found his job to be too stressful and not personally satisfying. The defendant intended to return to school, enrolling graduate courses with goal of a college professorship. While the defendant did take positions as an adjunct professor at the University of Hartford on a part-time basis commencing the Fall of 1993 and calendar year 1994, he failed to apply to colleges for enrollment in graduate school. Instead of pursuing higher education, the defendant embarked on a quotations graphic design business. The defendant would translate Latin and Greek phrases, and by use of a computer and software design a graphic display suitable for framing and sale to the general public. Due to lack of funds and controversy in the marriage, the business never got off the ground. The plaintiff has recently contracted with the University of Hartford as an adjunct professor to teach freshman reading and writing courses commencing the Fall of 1999, with a salary of $4,600.00, i.e., $2,300.00 per course.
Since the filing of the original complaint in the above entitled matter, dated February 17, 1998, the defendant has not sought full-time employment (other than a half-hearted attempt to send resumes and two interviews at OPM of the State of Connecticut and the Town of Wethersfield) for various reasons including the following: loss of insurance benefits provided by the City of Hartford for the plaintiff, defendant and minor daughter; desire to work in an area suited to the intellectual and emotional needs of the defendant to "give something back to CT Page 12785 society"; desire to continue part-time work at a university as an adjunct professor; and development of a graphic quotation design business. The defendant, (without consultation and agreement with the plaintiff) concluded that it was and is not in the best interest of the family for the defendant to work full time.
The only issue of the marriage between the parties, Alessandro Pisano, as previously stated, was born on November 12, 1989. The child inherited the congenital connective tissue problem which has, and presently, affects her eye sight. The daughter suffers from asthma, allergies and learning difficulties in the area of perceptual tasks. She has already had three laser surgeries for detachment of the retina in her left eye and presently suffers from severe myopia. The child is also a patient at the Schepens Retina Associates where she is treated for the hereditary Wagner-Stickler disease which affects her retina. She was required to undergo laser coagulation on the retina breaks in her left eye. (Plaintiff's Exhibits #5 and 6). The child presently treats with the Connecticut Asthma and Allergy Center in West Hartford, Connecticut for allergy and asthma condition (Plaintiff's Exhibit 2). She is required to seek review of her eye conditions at the Retina Institute in Boston approximately once every three to four months. The daughter requires prescriptions for her various conditions, including steroids and asthma medication of approximately $100.00 per month with approximately $20.00 per month uncovered under the existing medical plan. The co-pay and deductibles for care for the minor child approximates $80.00 to $90.00 per month according to the testimony. The child, is engaged in counseling at school, divorce and self-esteem issues, with the defendant objecting to the continuance of counseling with the present counselor, Dr. Hall.
The union of the parties seemed doomed prior to exchange of the marital vows. After a period of dating and breaking up, the parties married on November 12, 1988. The plaintiff was engaged to marry another man and terminated that relationship and a pregnancy prior to marrying the defendant. The defendant married the plaintiff knowing full well of the medical conditions plaguing the plaintiff. The defendant had purchased the marital residence at 1209 Mill Pond Road, Windsor, Connecticut in 1986 prior to the marriage. He financed the property based on his income taking into consideration the precarious nature of future income for the plaintiff based upon her physical condition. Subsequent to the marriage the parties refinanced the property, placed it in joint names, and contributed their weekly income CT Page 12786 toward family expenses and obligations.
During the first few years of the marriage prior to the birth of the child, the parties enjoyed good income, dined out regularly and engaged in leisure activities such as the Hartford Stage Company, movies, etc. The plaintiff worked on a full-time basis making approximately $26,500.00 per year in her full-time employment as a social worker. The defendant was employed on a full-time basis at the City of Hartford until the time of his retirement. After the birth of the child, the plaintiff engaged in part-time employment and matriculated at Eastern Connecticut State University to obtain a Masters Degree in Geriatric Social Work. The plaintiff continued to work until May of 1994 when she was involved in an automobile collision in the course of her employment. She sustained injuries that kept her out of work until the Worker's Compensation Commissioner determined that she had an ability to return to work in 1996. Said conclusion was challenged by the plaintiff who decided to settle her worker's compensation claim on a lump-sum basis. As previously stated in this opinion, she applied for and received Social Security Disability commencing March of 1997. In mid-1997, the plaintiff attempted to operate a business known as Forever Flowers where she would use primarily dry flowers in her business endeavor. This work was, although supported by the defendant, of a therapeutic nature only with the plaintiff finding that she could not perform the work due to her pain and physical limitations.
From the birth of the child to the filing of the complaint initially seeking a legal separation, the plaintiff was the primary caretaker of the minor child. She attended to the minor child's physical, emotional and medical needs throughout the child's formative years. The defendant, by his own admission, had little involvement with his child's life. He was engaged in a full-time basis in his position at the City of Hartford. For the months when the financial plan and budget of the City was in progress, he interacted with the child on a very limited basis. He admitted that he did not partake in the duties of parenthood until after the original complaint was filed.
As previously stated, the decision of the defendant to retire from employment with the City of Hartford on July 30, 1993, was a joint discussion after consultation with the plaintiff. Both parties have discussed the fact that the defendant was not happy working with the City of Hartford in a position he found to be stressful and unrewarding. The Court finds parties discussed and CT Page 12787 agreed that the defendant would further his education at graduate school to obtain a doctorate degree and, in the interim, the defendant would teach courses as an adjunct professor. The Court further finds that the marriage of the parties began its breakdown when the defendant failed to apply to college to further his education. The defendant instead decided to establish a business of his own and work as a part-time adjunct professor. He did not make enough additional income to pay the family bills which required the defendant to seek funds from the accounts set up for retroactive social security benefits and worker's compensation. The defendant thought the plaintiff had an earning capacity to earn money in spite of the congenital physical problems and loss of eye sight in conjunction with the physical injuries sustained from the automobile collision in 1994. The plaintiff disagreed with the defendant's use of the accumulated funds and further contended that she could not work.
As a result of the above disagreement, the plaintiff viewed the defendant as not working to his capacity while asking for money from the savings accounts. She feared a depletion of the Workers Compensation and Social Security accounts from future withdrawals to pay family bills, including extraordinary medical costs, etc. The defendant could not understand the plaintiff's position in refusing to permit him to withdraw funds on a periodic basis because he, according to his own testimony, he had supported the family in the past and would never permit the family to go without.
After reviewing the exhibits and testimony, the Court concludes that the defendant is the party who was economically myopic in his position concerning money and future employment. While the Court is convinced that the defendant is a very intelligent and decent man, his conduct post retirement was inconsiderate of the future needs of the family. The Court finds that the plaintiff cannot engage in substantial gainful employment now and in the future based upon her physical condition. Furthermore, the court also finds that the defendant is capable of engaging in full-time employment with an earning capacity of at least $25,000.00 per year in addition to his retirement income. It is well established that in a dissolution action the court has the power to look at earning capacity of a party in determining financial awards. Venuti v. Venuti,185 Conn. 156, 161 (1981); Lucy v. Lucy, 183 Conn. 230, 234 (1981);Miller v. Miller, 181 Conn. 610, 611-12 (1980). The plaintiff by his own testimony is of good health. He is of above average CT Page 12788 intelligence with a stellar past work record and his income at retirement was substantially more than $25,000.00. He also has specifically not sought full-time work by his own testimony. His goal of part-time employment and the operation of a business that has generated no income to date does not result in sufficient funds to meet the needs of the family. While his educational background may not be suited for a job in municipal finance at the present time the Court concludes that he can work on a full-time basis in another field and earn at least $480.00 per week.
The Court concludes that the defendant's altruistic pursuits must take a back seat to his duty to his spouse and daughter with their psychological, medical and physical infirmities. The Court further finds that the wife's present male friend has no financial responsibility to support her and further not a cause of the breakdown of the relationship. The Court is the sole arbiter of the credibility of the witnesses. Christine v. Eager,129 Conn. 62 (1942). The Court, as previously stated, concludes that the defendant is sincere in his beliefs and position on the evidence and breakdown of the marriage. The Court, however, based upon the health and financial position of the parties concludes his position concerning his future earnings and wife's future earning capacity is unrealistic and contrary to the evidence.
The Court has considered all of the statutory factors concerning custody and visitation set out in Connecticut General Statutes §§ 46b-56, 46b-56a and 46b-59. The Court has considered all of the factors in Connecticut General Statutes §§ 46-56, 46b-59, 46b-81,46b-82, 46b-83, 46b-89 and 46b-62
and other pertinent statutes, tax implications, earnings and earning capacity differential causes for the breakdown of the marriage and the consequences of the financial awards set forth below. The Court, with jurisdiction in this matter finds that the statutory stays have expired and the facts set out in the complaint are proven true. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown. It is further ordered that:
1. The Court hereby awards the parties joint custody of the minor child, Alessandra Pisano, born November 15, 1989 with primary residence with the mother. The father shall have reasonable rights of visitation which shall include the following: CT Page 12789
a. Alternate weekends from Friday 3:00 p. m. until Sunday at 7:30 p. m.;
b. Wednesdays from 3:00 p. m. to 7:30 p. m.; and
c. Father's Day.
The child shall remain with the mother on Mother's Day and shall further spend non-school time with either parent on the parent's birthday. The parties shall further alternate all holidays except Christmas Eve and Christmas Day. The minor child shall be with the father on Christmas Eve day and evening until 10:00 p. m. when the child shall be returned by the father to the mother. Christmas Day shall be spent with the mother. The above times and days of visitation and/or access may be modified by mutual agreement of the parties. Neither the plaintiff nor defendant shall relocate outside the State of Connecticut without providing the non-relocating ninety (90) days notice of an intent to permanently relocate.
2. The defendant shall pay child support for the minor child, Alessandra Pisano, in the amount of $131.00 per week. Said child support is in accordance with the Child Support Guidelines, taking into consideration the father's present earnings and earning capacity of $25,000.00 per year in addition to his retirement income and the mother's present income derived from Social Security.
The father shall maintain health insurance for the minor child as available through his former employer, the City of Hartford. The plaintiff shall pay $100 per year for an uncovered and/or unreimbursed medical and dental expenses for the minor child. The parties shall divide any of the uncovered and/or unreimbursed medical and dental expenses for the minor child as follows: 42% payable by mother and 58% payable by father. Medical expenses are defined to include but not be limited to medical/surgical care and attention, psychiatric care including psychologists and therapy expenses, dental/optical/opthamalogical expenses for the minor child. The father is further ordered to pay all orthodontic expenses for the minor child at the rate of $99.00 per month until paid. The father shall be credited for all future orthodontic expenses paid by him against his 58% contribution for uncovered and unreimbursed expenses for minor child. The Court further makes no order as to child care expenses CT Page 12790 based on the evidence presented by the parties.
3. The defendant shall pay periodic alimony in the amount $100.00 per week which shall terminate upon the first of the occurrence of the following events:
a. Death of the plaintiff or defendant;
b. Remarriage of the plaintiff;
 c. Cohabitation by the defendant with a third party as defined in Section 46b-86 of the Connecticut General Statutes;
Said periodic alimony shall be tax deductible to defendant and tax includible to plaintiff and contemplates that the plaintiff shall continue health insurance through COBRA at her expense.
4. The defendant shall quit claim all his right, title and interest in and to the marital residence located at 1209 Mill Pond Drive, South Windsor, Connecticut, to the wife. The wife shall pay and hold the defendant harmless from mortgage, taxes, and insurance on said property. The wife shall execute a promissory note secured by a mortgage in the principal amount of $30,000 payable to the defendant without interest upon the first of the occurrence of the following events:
a. Death of the wife;
b. Remarriage of the wife;
 c. The eighteenth birthday of the minor child, Alessandra Pisano, or graduation from high school prior to her nineteenth birthday, whichever shall occur first;
 d. Cohabitation with a third party male as defined in CGS 46b-86 of the Connecticut General Statutes.
5. The defendant have all right, title and interest in and to the 1988 Mazda 626 automobile. The plaintiff shall have all right, title and interest in and to the 1988 Mazda 929 automobile. The wife shall further have all right, title, and interest in and to the jewelry presently in her possession, her Webster Social Security Retroactive Account in the present CT Page 12791 balance of $3,780.62, and shall have access to, for the sole use of the child, of the Webster child's Social Security Retroactive Account in the present amount of $6,147.00, the Webster's lump sum workers' compensation account in the principal balance of $26,995.10, her American Express Mutual Funds in the amount of $3,118.45, Colonial USA IRA in the amount of $3,935.79.
In the event Social Security determines that there is an overpayment the plaintiff shall pay, and hold the defendant harmless, from any liability thereon.
6. The husband shall have all right, title and interest in and to his ITT Hartford Annuity 403C account in the amount of $19,399.07, his American Express Annuity in the amount of $3,297.75, and his checking and savings account at First Federal Savings, with a savings of $305.41 and checking of $7.32.
7. The husband shall have all right, title and interest in and to any personal property he presently has in his possession at his apartment in Bloomfield, Connecticut. The wife shall have all right, title and interest in and to the personal property located at the family residence at 1209 Mill Pond Drive, South Windsor, Connecticut, with the exception of the following articles of personal property which shall be transferred to possession and ownership of the defendant, as follows:
a. Console;
b. Cocktail table;
c. Remaining nesting table;
 d. Two (2) Picasso etchings listed on defendant's financial affidavit dated August 30, 1999;
e. Remaining piece of sectional sofa;
f. Remaining dining chair;
g. 1977 stereo and speakers;
h. Akai turntable and cassettes set;
 i. All art reproductions that were purchased or obtained by the defendant pre-marriage. As to post-marital CT Page 12792 reproductions, the parties shall divide them equally.
The defendant is further ordered to return the maple dresser and changing table top utilized by his daughter during her visitation within one (1) year from the date of this judgment.
8. Any counsel fees remaining due and owing to the counsel for the minor child, Attorney Kim Duell, shall be divided equally by the parties after an agreement as to the parties as to the balance due or order of the court at post judgment motion hearing.
9. The defendant shall have all right, title and interest in and to the monthly pension benefits paid as a result of his employment and subsequent retirement for the City of Hartford with the exception that the defendant shall maintain the plaintiff as his contingent annuitant, which according to the testimony of the parties provides fifty percent of the monthly benefits payable to the plaintiff upon death of the defendant.
10. The defendant shall pay, and hold the plaintiff harmless, from any liability for the Discover card debt of $2,411.91, and the First Card debt of $834.27. The defendant shall also be solely responsible for payments to his former attorney, Emily Moskowitz, and his mother, Mary A. Pisano, with said debts stated on his financial affidavit of August 30, 1999.
11. The plaintiff shall be responsible and pay counsel fees to her attorney, Barbara J. Ruhe, including, but not limited to, the balance owed as of July 26, 1999, as stated in her financial affidavit of $3,640.00.
12. The defendant shall maintain a life insurance policy in full force and effect at Northwestern Life in the face amount of $75,000. With his wife to be irrevocable beneficiary in the sum of $32,500, and his daughter to be irrevocable beneficiary in the sum of $32,500, until the defendant's obligation to pay alimony and/or child support have terminated pursuant to the provisions of this judgment.
13. The defendant shall claim the minor child, Alessandra Pisano, as a tax exemption on his state and federal income tax returns.
14. The defendant shall notify the plaintiff of any change of CT Page 12793 employment, including increase or decrease in the number of courses taught as a professor or high school instructor, and any other job change and/or salary or earned income increase, within one (1) week of commencement of the new position. The parties shall further exchange state and federal income tax filing commencing calendar year 1999, by mailing a copy of said returns including all W-2's, 1099's, Schedule C's, etc., within one (1) week of the filing of said returns with the appropriate taxing authorities.
15. The wife shall be entitled to health insurance through Cobra and the defendant is ordered to file any and all documents necessary at the school with the medical insurance provider presently insuring the plaintiff. The cost for said Cobra insurance shall be borne solely by the plaintiff.
16. Any refund from the joint income tax return for 1998 shall be deposited in the child's retroactive Social Security reimbursement account at Webster Bank up to the amount of the refund for expenses related to the cost of counsel for the minor child and/or therapist for the minor child. Any balance if any (after reimbursement for total withdrawn from said account for attorney fees and/or therapist bills for child only) shall be divided equally by the parties.
Devine, J.